## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 24 2020, 9:14 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Roberta L. Renbarger
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of H.M. and S.B. (Minor Children); | January 24, 2020 |
| | Court of Appeals Case No. 19A-JT-1607 |
| W.C. (Mother), | Appeal from the Allen Superior Court |
| *Appellant-Respondent,* | |
| v. | The Honorable Charles F. Pratt, Judge |
| Indiana Department of Child Services, | Trial Court Cause No. 02D08-1809-JT-335 02D08-1809-JT-336 |
| *Appellee-Petitioner.* | |

**Najam, Judge.**

# Statement of the Case

W.C. ("Mother") appeals the trial court's termination of her parental rights over her two minor children, H.M. and S.B. ("the Children").[1] Mother raises two issues for our review, which we restate as follows:

    1.    Whether the trial court clearly erred when it concluded that the conditions that resulted in the Children's removal from Mother's care were unlikely to be remedied.[2]

    2.    Whether the trial court erred when it concluded that the termination of Mother's parental rights over the Children was in the Children's best interests.

We affirm.

# Facts and Procedural History

On September 27, 2018, the Indiana Department of Child Services ("DCS") filed petitions to terminate Mother's parental rights over the Children. The trial court held a fact-finding hearing on the DCS's petitions, after which it entered

---

[1] Each child's father has separately appealed the termination of his own parental rights. Although our motions panel denied a request to consolidate the three appeals, the appeals were assigned to the same writing panel, and we have decided each appeal on the same date.

[2] Mother mistakenly characterizes this issue as whether the trial court erroneously found that the continuation of the parent-child relationships posed a threat to the well-being of the Children. The trial court entered no such finding, and the substance of Mother's argument on this issue makes clear that she intended to challenge the finding the court did enter, namely, that the conditions that resulted in the Children's removal were unlikely to be remedied. Accordingly, that is the issue we address.

the following undisputed facts with respect to Mother's relationship with the Children:

> 5. . . . [T]here was a physical altercation between the Mother and a man on or about July 12, 2016. The incident of domestic violence occurred in the presence of the [C]hildren and [one of the Children] was struck. On or about August 16, 2016, another incident of domestic violence took place in the presence of the [child who had been struck]. The Mother was arrested for domestic battery. The Mother tested positive for cocaine on or about November 11, 2016. The father of the [struck child] tested positive for cocaine as well. . . .

> \* \* \*

> 8. A Dispositional Hearing [in the ensuing child-in-need-of-services ("CHINS") case] was held on October 25, 2017[,] as to [M]other. The [Children[3] were] continued in licensed foster care. The Dispositional Decree incorporated a Parent Participation Plan that required her to [comply with fifteen different requirements].

> 9. The Mother was granted supervised visitation with [each of the Children]. . . .

> 10. A Review Hearing was held on February 8, 2017. The Court found that the Mother failed to secure a psychiatric evaluation and was not participating in therapy. . . .

---

[3] The court entered one order for each of the Children. At least with respect to Mother, the orders are substantially similar, and for ease of readability we have substituted an order's use of the singular "child" with the plural "Children" where appropriate.

11.     On July 10, 2018[,] a Permanency Hearing was held.  The Court found that the Mother had not demonstrated an ability to benefit from services . . . .

12.     The Mother has tested positive for methamphetamine during the pendency of the underlying CHINS case.  From the testimony of the toxicologist . . . , the Court finds that the Mother tested positive for methamphetamine on November 2, 2018, November 28, 2018, and[] December 18, 2018.  She also tested positive for methamphetamine on January 16, 2019.  She tested positive for cocaine on March 14, 2017, August 3, [2]017[,] and September 4, 2018.

13.     From the testimony of [DCS] case manager Joshua Meyer, the [C]ourt finds that the Mother was enrolled in an in-patient residential rehabilitation program from July 2018 [through] August 2018.  Shortly after her release from that program[,] she tested positive for cocaine.

14.     The Mother was referred for outpatient therapy and home based services to Park Center, Inc.  From the testimony of [Meyer, t]he Mother did not engage in the services there.  The Mother was then referred for an assessment and services for substance abuse and home based support to Dockside.  That referral was discontinued due to the Mother's noncompliance.  Additionally[,] Dockside determined that the level of care the [M]other required was more than that which they could provide.

15.     From the testimony of [Meyer,] the [C]ourt finds that the Mother was first referred for medication management to Park Center, Inc.  She was unsatisfactorily discharged from that agency and a new referral was made for her to the Bowen Center.

16.     [DCS] referred the Mother [for] a drug and alcohol assessment at C.A.P., Inc.  She completed the assessment [i]n

December[] 2018. The assessment recommended that the Mother enroll in an "inpatient treatment program with a follow up in a sober living house[."] She has not enrolled in an inpatient program.

17. The Mother is receiving home based services through C.A.P., Inc. based on a December 2018 referral from [DCS]. Her home based service provider, Pat Geimer, testified that the Mother is making an effort in that on or about the week before the [f]actfinding [hearing], the Mother admitted that she needed help. Her admission, Ms. Geimer testified, is a first step.

18. Ms. Geimer testified that she has provided the Mother with transportation.

19. At the time of the [f]actfinding [hearing,] the Mother was living in a motel, . . . having recently moved from another motel that [Geimer] described as "not a good place[."] The current motel residence is not large enough for a family residence. [Geimer] testified that the motel is in the proximity of "strip joints" and is in a "rough part of town[."]

20. The Department has provided referrals to multiple agencies for the supervision of Mother's visits with the [Children]. The Mother asserted that she had transportation issues with regard to the referral to SCAN, Inc. A second referral was made to Dockside. Again[,] she asserted that she lacked transportation but was unsure if she had been provided with bus passes. A third referral was made to Lifeline and a fourth was made to Whittington Services.

21. The Mother's assertions regarding transportation issues are not entirely supported by the testimony of Lifeline Family Consultant, Ashley Bienz. From her testimony[,] the Court finds that[,] on October 1, 2018, the [M]other cancelled explaining she

had car trouble. However, on the third scheduled visit in November the Mother called and advised she was in Indianapolis. The Mother advised she would be present for the next scheduled visits. However, the Mother texted the agency and advised that she was again in Indianapolis . . . . Similarly, the Court finds from the testimony of Bruno Taylor of Whittington that[,] between November 2018[] and January 16, 2019, the Mother cancelled her scheduled visits with the [Children].

22.     The Mother visited the [Children] one time in July 2018[] and one time in November 2018. She has not seen the [Children] since.

*      *      *

29.     The [Children have] been placed outside the home under a dispositional decree for more than six (6) months.

30.     From the testimony [of] Tracy Kearns, the [Children's] licensed foster care provider, the Court finds that [H.M.] was suffering from nightmares and anxiety when . . . first placed into her care in August 2016 [and S.B. had multiple screaming temper tantrums each day]. Since then[, H.M.'s] nightmares have decreased and he is less anxious [and S.B. is no longer displaying the extreme behaviors].

31.     [H.M.'s] issues and progress in foster care are supported by the testimony of Whittington Homes and Services[] therapist[] Annette Cook. Therapist Cook provides therapy for [H.M.] She is addressing his anxiety and coping mechanisms. She testified that [H.M.] is stable in his foster home. . . .

32.    [H.M.'s] therapist also testified that the child exhibits Attention [D]eficit Hyperactivity Disorder (ADHD) symptoms and is "very order oriented" and requires consistency.

33.    Should parental rights be terminated[,] [DCS] has an appropriate plan, that being adoption. The [Children are] in a potential pre-adoptive home.

34.    The [Children's] Guardian ad Litem has concluded that the [Children's] best interests are served by the termination of parental rights. In support of his conclusion[,] he testified that the parents have not demonstrated . . . continuity of life stability [sic]. He also cited the Mother's recent positive drug screens.

Appellant's App. Vol. II at 69, 71-74 (H.M.); 76-80 (S.B.) (record citations omitted).

[4]    In light of its findings, the court concluded as follows:

By the clear and convincing evidence[,] the [C]ourt determines that there is a reasonable probability that [the] reasons that brought about the [Children's] placement outside the home will not be remedied. Shortly after her inpatient treatment in 2018, [Mother] tested positive for cocaine. The Mother has continued to use methamphetamine and had a positive test for the illegal substance on or about January 26, 2019, a few weeks before the commencement of the [f]actfinding [hearing]. The Mother is residing in a motel in a neighborhood that is described as being in a rough part of town and which is inadequate for the care of the [Children]. She only recently took a "first step" toward rehabilitation by her admission that she needs help. She has not visited her [Children] since November 2018. . . .

*Id.* at 74 (H.M.); 80-81 (S.B.). The court further concluded that DCS had a satisfactory plan in place for the care and treatment of the Children and that termination of Mother's parental rights was in the Children's best interests. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[5] Mother appeals the trial court's termination of her parental rights over the Children. The court's termination order recites findings of fact and conclusions thereon following an evidentiary hearing before the court. As our Supreme Court has explained, in such circumstances

> [w]e affirm a trial court's termination decision unless it is clearly erroneous; a termination decision is clearly erroneous when the court's findings of fact do not support its legal conclusions, or when the legal conclusions do not support the ultimate decision. We do not reweigh the evidence or judge witness credibility, and we consider only the evidence and reasonable inferences that support the court's judgment.

*M.H. v. Ind. Dep't of Child Servs. (In re Ma.H.)*, 134 N.E.3d 41, 45 (Ind. 2019) (citations omitted).

[6] "Parents have a fundamental right to raise their children—but this right is not absolute." *Id.* "When parents are unwilling to meet their parental responsibilities, their parental rights may be terminated." *Id.* at 45-46. To terminate parental rights, Indiana Code Section 31-35-2-4(b)(2) (2019) requires DCS to demonstrate, as relevant here, that "[t]here is a reasonable probability

that the conditions that resulted in the [Children's] removal or the reasons for placement outside the home of the parents will not be remedied" and that the "termination is in the best interests of the [Children]."

### Issue One:  Whether The Conditions That Resulted In Removal Will Not Be Remedied

Mother first asserts on appeal that the trial court's conclusion that the conditions that resulted in the Children's removal will not be remedied is clearly erroneous.  In determining whether the conditions that led to a child's placement outside the home will not be remedied, a trial court is required to (1) ascertain what conditions led to the child's removal or placement and retention outside the home; and (2) determine whether there is a reasonable probability that those conditions will not be remedied.  *R.C. v. Ind. Dep't of Child Servs. (In re K.T.K.)*, 989 N.E.2d 1225, 1231 (Ind. 2013).  Here, the trial court found that DCS had removed the Children from Mother's care because of incidents of domestic violence in the presence of the Children while they were in Mother's care and also because of Mother's drug use.

In order to determine whether there is a reasonable probability that the conditions that resulted in removal will not be remedied, the court should assess a parent's "fitness" at the time of the termination hearing, taking into consideration any evidence of changed conditions.  *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014).  The court must weigh any improvements the parent has made since removal against the parent's "habitual patterns of conduct to determine whether there is a substantial probability of

future neglect or deprivation." *Id.* When making such decisions, courts should consider evidence of a "parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, lack of adequate housing, and employment." *Evans v. St. Joseph Cty. Off. of Fam. & Child. (In re A.L.H.)*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002).

[9] The evidence demonstrates that Mother continued to test positive for illegal substances throughout the proceedings before the trial court. Indeed, Mother tested positive for methamphetamine on four different occasions after DCS had filed its petitions for the termination of her parental rights. And she tested positive for cocaine on three occasions during the CHINS proceedings.

[10] Mother also failed to successfully complete recommended services. She did not engage in the home-based services with Park Center; her referral to Dockside was discontinued due to her noncompliance; she was unsatisfactorily discharged from Park Center's medication management program; and she never enrolled in a recommended inpatient treatment program. Further, she lacked adequate housing at the time of the fact-finding hearing, as she had been living in a motel that was not large enough for a family and was located near several strip clubs and otherwise in an unsafe area for the Children. Finally, Mother visited the Children one time following the DCS's filings on the petitions to terminate.

[11] The evidence supports the trial court's findings, and the findings support the court's conclusion that there is a reasonable probability that the conditions that

resulted in the Children's removal will not be remedied. Mother's argument on appeal is simply a request for this Court to reweigh the evidence, which we cannot do. The trial court did not clearly err when it concluded that there is a reasonable probability that the conditions that resulted in the Children's removal or the reasons for placement outside of Mother's home will not be remedied.

### Issue Two: Children's Best Interests

[12] Mother next contends that the trial court clearly erred when it concluded that the termination of her parental rights is in the Children's best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dep't of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability[,] and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Off. of Fam. & Child.*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child." *In re A.K.*, 924 N.E.2d at 224.

[13] When making its decision, the court must subordinate the interests of the parents to those of the child. *See Stewart v. Ind. Dep't of Child Servs. (In re J.S.)*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). "The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship."

*Id.* Moreover, this Court has previously held that recommendations of the family case manager and court-appointed advocate to terminate parental rights, coupled with evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.*

Here, the Children's court-appointed special advocate testified that termination of Mother's parental rights was in the Children's best interests due to her life instability and continued drug use. Further, the Children's therapist testified that each child's mental health had improved since removal from Mother's care and placement in foster care. And, as explained above, the evidence is sufficient to show that the conditions that resulted in the Children's removal will not be remedied.

Children need consistent and reliable care as well as permanency. The totality of the evidence, including Mother's continued substance abuse issues, instability, and failure to successfully complete recommended services, supports the trial court's conclusion that termination of Mother's parental rights is in the Children's best interests. Mother's argument on this issue is, again, simply a request for this Court to reweigh the evidence, which we cannot do. We affirm the trial court's termination of her parental rights.

Affirmed.

Vaidik, J., and Tavitas, J., concur.